%JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
NCO FINANCIAL SYSTEMS, INC.

## DEFENDANTS
GREENTREE ACQUISITIONS

**(b)** County of Residence of First Listed Plaintiff  MONTGOMERY, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  SNOHOMISH COUNTY WA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
PETER ROSENZWEIG; SESSIONS, FISHMAN, NATHAN & ISRAEL;
1818 MARKET ST. STE. 3510, PHILA, PA 19103; (215) 832-3606

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☑ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 365 Personal Injury - Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 320 Assault, Libel & Slander | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 330 Federal Employers' Liability | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 340 Marine | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☑ 190 Other Contract | ☐ 345 Marine Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 355 Motor Vehicle Product Liability | **PERSONAL PROPERTY** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 360 Other Personal Injury | ☐ 370 Other Fraud | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS** | ☐ 371 Truth in Lending | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 |
| | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332 (A)
Brief description of cause:
BREACH OF CONTRACT; ACCOUNTING; DECLARATORY JUDGMENT

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  11/19/09

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NCO FINANCIAL SYSYEMS, INC.** : | **CIVIL ACTION** |
| 507 Prudential Road : | |
| Horsham, PA 19044 : | |
| : | **NO.** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **GREENTREE ACQUISITIONS** : | |
| 1719 Hewitt Avenue : | |
| Everett, WA 98201 : | |
| : | |
| Defendant. : | |

**COMPLAINT**
**Jury Trial Demanded**

Plaintiff NCO Financial Systems, Inc. (referred to as "NCO") brings this action against Defendant Greentree Acquisitions (referred to as "Greentree"), and alleges as follows:

**INTRODUCTION**

1.     This action for declaratory, injunctive, monetary and other appropriate relief arises out of Defendant Greentree's multiple breaches of its Agency Network Services Agreement with Plaintiff NCO (said Agency Network Services Agreement shall be referred to as the "Agreement" and is attached hereto as Exhibit "A").

## PARTIES

2.     NCO is a Pennsylvania company with its principal place of business located in Horsham, Montgomery County, Pennsylvania.

3.     Defendant Greentree, upon information and belief, is a Washington company. It maintains a principal place of business in Everett, Washington and has one member, Randall Goins.

## JURISDICTION

4.     This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. § 1332(a), based upon the diversity of citizenship between NCO and Defendant Greentree.

5.     NCO certifies that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest incurred, costs and attorney's fees.

## VENUE

6.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District Court, because this is the judicial district where NCO and Defendant Greentree chose and agreed to litigate their disputes. *See* Exhibit A, p. 6, ¶ 19. Per the Agreement, Pennsylvania law is applicable. *See* Exhibit A, p. 6, ¶ 19. Further, as noted above in Paragraph 2, NCO is headquartered within the venue of this Court.

## FACTS

7.      NCO is a national debt collection company with several divisions that provide various collection-related services.  As part of its collection efforts, NCO contracts with agencies (through an "Agency Network Services Agreement") to collect on behalf of NCO.  These agencies are required to remit to NCO the gross amount collected.  Once received, NCO pays the agency its fees and reimburses the agency all approved costs.

8.      On December 2, 2008, Defendant Greentree, through its sole member, Randall Goins, entered into its Agency Network Services Agreement with NCO. *See* Exhibit A.

9.      Pursuant to the Agreement, Defendant Greentree has agreed, that unless otherwise specified by NCO, it is required to remit to NCO "all GROSS monies collected" on a weekly basis, at the minimum. *See* Exhibit A, p. 2, ¶ 3.

10.      Pursuant to the Agreement, Defendant Greentree has agreed, that "NCO reserves the right to recall or ask for a return of any account placed with [Agency] for any reason whatsoever ... [and] [a]t no time shall Agency have the right to exercise or claim any fees, mechanics or other lien on any account of the proceeds recovered on any account after such account has been recalled by NCO." *See* Exhibit A, p. 4, ¶ 13.

11.      Pursuant to the Agreement, Defendant Greentree has agreed, that "NCO shall have the right at anytime during normal business hours, with or without

- 3 -

prior notice, to review, audit and/or copy any and all documents maintained by [Agency] in direct relationship to NCO accounts.  [Agency] agree[s] to cooperate with the designated NCO agent by providing access to all accounts, equipment, telephone and other amenities without charge to NCO.  Expenses for the on site audits conducted in accordance with NCO's Agency Network Standard Operating Procedures will be reimbursed to NCO by the Agency." *See* Exhibit A, p. 4-5, ¶ 15.

12.     Defendant Greentree has also agreed to comply with all of the terms and conditions of the Agreement and NCO's Agency Network Standard Operating Procedures ("SOP").

13.     On or about November 12, 2009, NCO received information that Defendant Greentree may have been breaching the Agreement by failing to remit to NCO monies collected on accounts.

14.     Upon receipt of that information, pursuant to ¶ 15 of the Agreement, NCO requested that it be permitted to audit the documents maintained by Defendant Greentree in direct relationship to NCO accounts.     Despite the Agreement, Defendant Greentree has repeatedly rejected NCO's requests to perform an audit.

## COUNT 1 – BREACH OF CONTRACT AND REQUEST FOR INJUNCTION

15.     NCO repeats and realleges paragraphs 1 through 14 above as though fully set forth herein.

16.     Defendant Greentree, upon information and belief, has breached the Agreement by failing remit to NCO "all GROSS monies collected" on NCO accounts.

17.     Defendant Greentree, upon information and belief, has breached the Agreement by continuing collection efforts and collecting on accounts after they had been recalled by NCO, and failing remit to NCO "all GROSS monies collected" on such accounts.

18.     Defendant Greentree has breached the Agreement by refusing to allow NCO to audit the documents maintained by Defendant Greentree in direct relationship to NCO accounts.

19.     NCO has been damaged by Defendant Greentree's multiple breaches of the Agreement.

20.     NCO seeks and is entitled to an injunction, enforcing the terms of the Agreement, particularly that it be permitted to audit the documents maintained by Defendant Greentree in direct relationship to NCO accounts.  To the extent that Defendant Greentree has already breached the Agreement, NCO is entitled to any and all resulting damages.

## COUNT II – ACCOUNTING

21.     NCO repeats and realleges paragraphs 1 through 20 above as though fully set forth herein.

22.     Upon information and belief, Defendant Greentree has failed to remit to NCO "all GROSS monies collected" on NCO accounts.

23.     To determine whether Defendant Greentree has breached the Agreement by failing to remit to NCO "all GROSS monies collected" on NCO accounts, NCO, pursuant to ¶ 15 of the Agreement, has requested that Defendant Greentree allow it to audit the documents maintained by Defendant Greentree in direct relationship to NCO accounts.

24.     Defendant Greentree has repeatedly rejected NCO requests that it be allowed to audit the documents maintained by Defendant Greentree in direct relationship to NCO accounts.

25.     Without an accounting, NCO will not have the information necessary to accurately determine the sum of monies, if any, Defendant Greentree owes NCO.

26.     An accounting is necessary to determine the amount due to NCO.


## COUNT III – DECLARATORY JUDGMENT

27.     NCO repeats and realleges paragraphs 1 through 26 above as though fully set forth herein.

28.     Pursuant to 28 U.S.C. § 2201, *et seq.*, NCO seeks and is entitled to a declaratory judgment that the Agreement executed by Defendant Greentree and attached hereto as Exhibit A, is lawful and enforceable.

29.     The Agreement is valid and binding.

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Plaintiff, NCO Financial Systems, Inc., respectfully requests that:

a) Defendant Greentree be duly cited to appear and respond to this Complaint;

b) The Agreement entered into and signed by Defendant Greentree be found valid and enforceable;

c) NCO be awarded judgment for all damages to which it is entitled, including, but not limited to, damages for all monies Defendant Greentree has failed to remit;

d) Defendant Greentree be enjoined, restrained, and prohibited from disclosing and using NCO's confidential and proprietary information and trade secrets, in its possession, for its benefit or for the benefit of another;

e) Defendant Greentree be ordered to return NCO's confidential and proprietary information and trade secrets that is in its possession, custody or control;

f) Defendant Greentree be ordered to immediately allow NCO to perform an audit of the documents maintained by Defendant Greentree in direct relationship to NCO accounts;

- 7 -

g)    NCO be awarded all attorney's fees and costs incurred in connection with this Complaint, pre-judgment interest, and all other general and equitable relief to which it is entitled.

Respectfully submitted,

Dated:  November 19, 2009

Peter R. Rosenzweig
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
1818 Market St., Suite 3510
Philadelphia, PA 19103
Ph.  (215) 832-3606
prosenzweig@sessions-law.biz

Attorneys for Plaintiff

- 8 -

# EXHIBIT "A"

**SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP**
**1818 MARKET STREET**
**SUITE 3510**
**PHILADELPHIA, PA 19103**

NCO°

## AGENCY NETWORK SERVICES AGREEMENT

This Agreement made this _2nd_ day of _December_ 200_8_, between Greentree Acquisitions with a principal address of 1719 Hewitt Ave, Everette, WA 98201 (herein referred to as "Agency" "you" or "your") and various creditors and/or debt purchasers (herein referred to as "Client") who have authorized NCO Financial Systems, Inc.'s Agency Network Services (herein referred to as "we", "our" or "NCO") to conduct collection services on their behalf and whose names will be reflected in a separate communication forwarding individual accounts to you. Each Client has authorized NCO, as its agent, to engage you to provide collection services on behalf of such Client in connection with the collection of certain account balances owed by various debtors (herein referred to as the "Debtor").

In consideration of the foregoing and the mutual covenants contained herein, the parties hereto agree as follows:

1.    Subject Matter

NCO, on behalf of the Client, hereby retains you to collect monies owed Client on unpaid and delinquent accounts referred to you by NCO during the term of this Agreement. If a conflict of interest precludes your acceptance of a particular matter, you will notify NCO, in writing, of the fact immediately. You agree to diligently pursue the collection of monies due on the referred accounts promptly and in accordance with applicable state and federal law as interpreted in your jurisdiction. You also agree to comply with NCO's Agency Network Standard Operating Procedures, attached hereto and incorporated herein by reference as "Agency Network SOP's. NCO reserves the right to amend its Agency Network SOP's at any time with prior written notice to you, and your acceptance of the accounts or performance of any services on the accounts forwarded to you will serve as your acceptance of the SOP's as amended.

2.    Compensation/Fees

NCO agrees to pay Agency a percentage (%) contingency fee on gross monies collected. The percentage contingency fee is stipulated in the placement/forward file. Your acceptance or performance of any services on the accounts forwarded to you will serve as your acceptance of the contingency fee terms stated or as modified from time to time.

All amounts collected from a Debtor must be remitted to NCO in gross, as agent for the Client. **NO DEDUCTION MAY BE MADE FOR FEES, EXPENSES, COURT COSTS OR ANY OTHER AMOUNT**. NCO will, in a timely manner, pay all your fees on the gross remit being posted in our offices and will reimburse you for approved costs and expenses. All payments shall be sent electronically unless given prior permission by NCO.

Agency will not be entitled to a fee, contingent or otherwise, for recoveries reported in the first ten (10) days after the account is placed. This does not apply to recoveries received by your office, but only to direct payments reported to you, having been received by NCO, or by the Client directly.

# NCO

All NSF transactions and payment corrections shall be presented within forty-five days (45) of the original transaction date.  NCO will not accept NSF's or corrections and the Agency will not be reimbursed with out prior permission of the client and NCO.

All reimbursement disputes for commission and cost must be presented with sixty (60) days of the transaction.  It is your responsibility to reconcile all discrepancies within sixty (60) days.  NCO will not review or reimburse transactions that are not presented within sixty (60) days.

3.     Remittance

Unless otherwise specified, all GROSS monies collected for all portfolio accounts including Non Sufficient Funds (NSFs) will be reported in the manner outlined in the Agency Network Standard Operating Procedures.  Remittances should at minimum be conducted weekly, or as otherwise specified by NCO.

4.     Communications with Debtors

NCO reserves the right to review any written communication you deem appropriate to send to a Debtor.  Any requirements for advance review of correspondence will be specified in a letter referring a particular matter to you.

5.     Compliance with Laws

You agree that you will perform all services for each Client and for NCO in accordance with all applicable state and federal laws.  You acknowledge that you are familiar with all applicable federal, state and local laws pertaining to the collection of debts and consumer protection (collectively, the "Laws"), including but not limited to the Fair Debt Collection Practices Act (15 U.S.C. §1692, et seq.), the Gramm-Leach-Bliley Act (15 U.S.C. §6801, et seq.) the Health Insurance Portability and Accountability Act of 1996 (herein referred to as "HIPAA"), and the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.). You have and will continue to maintain in force and in good standing all insurances, licenses, permits and authority required by any governmental entity to carry on your business and perform your obligations under this Agreement. You shall immediately notify NCO of any action taken by an individual, a regulatory agency, attorney, or court regarding violation of any regulations governing your debt collection practices. Additionally, you will maintain a complete history of complaints (both alleged and valid) and responses that shall be available for review by NCO at any time.

6.     Insurance

During the term of this Agreement, you agree to maintain at your sole expense the below referenced insurance policies. Each policy shall be written with a financially sound and reputable insurer, and who meets with NCO's satisfaction. The below policy limits are intended as minimum threshold amounts, and it shall be your duty to maintain coverage above and beyond these minimum thresholds as is customarily the case in the normal course of business by agencies of similar size and type:

NCO

a) Errors and Omissions Insurance Policy, in which the limit of aggregate coverage shall be not less than one million dollars ($1,000,000.00),

b) Employee Theft and Dishonesty Blanket Bond, in which the limit of coverage shall not be less than one hundred thousand dollars ($100,00.00),

c) General Liability Insurance, in which the limit of aggregate coverage shall be not less than one million dollars ($1,000,000.00).

Each policy of insurance shall name NCO and Client as an additional insured, if requested by NCO, and shall not be canceled or amended for any cause without first giving NCO thirty (30) days prior written notice. A certificate of said insurance shall be delivered to NCO on or before the commencement of this Agreement, or at least ten (10) days prior to the expiration or cancellation of any policy that is replaced.

7.    Confidentiality

You acknowledge that NCO and its Clients deem all information in your possession in connection with this Agreement (herein referred to as "information") and your performance hereunder to be strictly confidential. You acknowledge that NCO's and Client's identity are deemed to be confidential information, which shall not be disclosed to your other clients, but may be disclosed to Debtors in the ordinary course of collection efforts. You agree that you shall hold all information in strict confidence and shall not disclose any such information to any third party without the prior written consent of NCO, nor shall you use such information for any purpose whatsoever except as contemplated hereunder. NCO proprietary systems, including but not limited to eForwardEase, are considered confidential and must not be shared with any other entity without prior written consent of NCO. This section seven (7) shall survive any termination of this agreement.

In the event of a violation of the provisions of this section, NCO shall be entitled, in addition to other rights and remedies it may have, to maintain an action for damages and permanent injunctive relief, it being agreed that the substantial and irrevocable damages which NCO would sustain upon any such violation are impossible to ascertain in advance and money damages would not provide an adequate remedy to NCO.

8.    Non-exclusivity

It is expressly understood and agreed that this Agreement is non-exclusive, that NCO may employ the services of multiple agencies or law firms and that NCO may exercise absolute discretion with respect to the accounts referred to you for collection. It is further agreed that, in connection with the performance of this Agreement, any cost, other than usual fees, incurred by you whatsoever, including but not limited to changing your physical location, upgrading computer hardware and software, hiring additional personnel or altering forms used in the collection process shall be borne exclusively by you. You waive any right you may have or which you believe may exist or recover such costs from NCO.

9.    Staff Qualifications

You warrant that all persons assigned by you to the performance of this contract shall be employees of your agency and shall be fully qualified to perform the work required. At no time shall you subcontract out collection of NCO placed accounts with another collection agency.

- 3

# NCO

10.  Nondiscrimination and Workplace Safety

You agree to abide by all federal, state and local laws, rules and regulations prohibiting discrimination in employment and controlling workplace safety. Any violations of applicable laws, rules and regulations may result in termination of this contract.

11.  Indemnification

You agree to indemnify, defend and hold harmless NCO, the applicable Client, and their respective parent companies, subsidiaries, affiliates, officers, directors, employees and agents from and against any and all claims, causes of action, demands, judicial or administrative proceedings, liabilities, errors, damages, costs and expenses (including court costs and reasonable attorneys' fees) that may arise as a result of your acts or omissions (or those of your employees, banks or agents), your alleged or actual violations of applicable law in the performance of this Agreement, or your breach of this Agreement.

12.  Electronic Files

In consideration of NCO placing accounts with you, you agree to utilize eForwardEase in accordance with NCO's Agency Network Standard Operating Procedures to download new placements assigned, to upload activity updates generated by your collection system on a daily basis, view your inventory and performance analysis and to return accounts. At all times during the term of this Agreement, NCO shall have access to the files placed with you through eForwardEase.

13.  Return of Accounts

It is expressly understood and agreed that NCO reserves the right to recall or ask for a return of any account placed with you for any reason whatsoever. At no time shall Agency have the right to exercise or claim any fees, mechanics or other lien on any account of the proceeds recovered on any account after such account has been recalled by NCO. At no time shall you have an ownership interest in any account placed with you by NCO. Upon notification of return/recall, you shall return to NCO all records originally provided by NCO and/or created by you during collection effort.

After the accounts are returned/recalled, you shall be entitled to fee or commission on payments received by NCO after the return date for up to ten (10) days. All payments received after that date will not be paid a fee. Direct payments received after the date of recall will not be subject to a fee.

14.  Closing of Accounts

For many reasons, a Client will require NCO to close active accounts from time to time. In these instances, if NCO is due a fee, your fee will also be protected. However, if for any reason NCO is not entitled to a fee, you likewise will not be due any fee on such account, regardless of the work on the file that may have been performed.

15.  Right to Audit

NCO shall have the right at any time during normal business hours, with or without prior notice, to review, audit and/or copy any and all documents maintained by you in direct relationship to NCO accounts. You agree to cooperate with the designated NCO agent by

# NCO

providing access to all accounts, equipment, telephone and other amenities without charge to NCO.

Expenses for on site audits conducted in accordance with NCO's Agency Network Standard Operating Procedures will be reimbursed to NCO by the Agency.

16.    Non-solicitation

It is expressly understood and agreed that during the period commencing on the date of this Agreement and terminating six (6) months after termination of this Agreement and your return of all accounts to NCO, you shall not directly or indirectly solicit placement of accounts from known clients of NCO. However, if an existing relationship with a known Client of NCO had been established prior to entering into this agreement, said relationship shall not be subject to the non-solicitation terms of this Agreement.

It is further expressly understood and agreed that during the period commencing on the date of this Agreement and terminating six (6) months after termination of this Agreement and your return of all accounts to NCO, you shall not directly or indirectly solicit current NCO employees for employment.

17.    Term and Termination

The term of this Agreement shall commence on the date herein set forth and shall continue until either party gives the other notice of termination in accordance with the following requirements:

Said notice shall be in writing, and shall be deemed proper if given by personal delivery, overnight courier or certified mail to the address stated below.

To Client:

You (Agency):

Randall Goins
Greentree Acquisitions
1719 Hewitt Ave
Everette, WA 98201

To NCO:

David R. Schlee, Jr., Esq.
NCO Financial Systems, Inc.
1804 Washington Blvd.
Dept. 550
Baltimore, MD 21230

With a Copy to:

Joshua Gindin, Esq.
Executive Vice President & General Counsel
NCO Financial Systems, Inc.
507 Prudential Road
Horsham, PA 19044

Notwithstanding termination of this Agreement, all rights, obligations and duties incurred under this Agreement by either party, including, but not limited to that which is stated under the Confidentiality section and the Indemnification section, will survive the termination of this Agreement and continue in full force and effect.

- 5

NCO™

18.    Books and Records

During and for a period of at least three (3) years or the period of time required by applicable state law, whichever is longer, following the termination of this Agreement, you agree to maintain complete and accurate records with respect to each matter handled on behalf of NCO and Client. You agree to permit Client, NCO, or their agents to review and audit periodically such files during regular business hours with or without prior notice.

19.    Governing Law

The Agreement will be governed by and construed under the laws of the State of Pennsylvania, without regard to the principles of conflict laws. Any suit arising hereunder shall be brought in a court of competent jurisdiction located in Pennsylvania.

20.    Integration

The Agency Network Services Agreement, all Addendums, including the Agency Network Standard Operating Agreement, and any subsequent correspondence referring matters to you and establishing procedures to be followed constitute the entire Agreement between you and NCO, and shall not be changed except by written notice. All provisions found in Addendum shall be deemed incorporated by reference herein and made part of this contract.  NCO reserves the right to amend the Agency Network Services Agreement and any and all Addendums thereto at any time if done so in writing. Every amendment shall specify the date on which its provisions shall be effective.

This contract, in its final composite form, shall represent the entire agreement between the parties and shall supersede all prior negotiations, representations or agreements, either written or oral, between the parties relating to the subject matter hereof. This contract between the parties shall be independent of and have no effect on any other contracts of either party.

22.    Captions

The captions or headings in this contract are for reference only and do not define, describe, extend, or limit the scope or intent of this contract.

23.    Force Majeure

Notwithstanding anything to the contrary contained herein, neither party will be liable to the other for a failure or delay in the performance of its obligations under this Agreement to the extent such failure or delay is caused by an act of God, war, civil disturbance, court order, labor dispute, fire, or other cause beyond its reasonable control such failures or fluctuations in electrical power, heat, light, telecommunication lines or telephones.

24.    Severability

If any provision of this contract is determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this contract shall not be affected and each provision of this contract shall be enforced to the fullest extent permitted by law. However, that, in such case, the parties will in good faith use their reasonable efforts to

NCO

achieve the purpose of the invalid provision by agreeing on a substitute provision that is legally enforceable.

26.    Intellectual Property

No trademark, copyright, patent, trade secret, trade dress or any other proprietary right is granted to either party under this Agreement.

27.    Business day defined

A "business day" is any day other than Saturday, Sunday, or a federal holiday.

28.    Relationship of Parties

The relationship of the parties under this Agreement is that of independent agents and not that of employer/employee, principal/agent, partnership, joint venture or representative.

**IN WITNESS WHEREOF**, the parties, by their duly authorized representatives, have executed this agreement in duplicate on the date first above written.

Agency
Name:     **Greentree Acquisitions**                    **NCO Financial Systems, Inc.**

By: _____          By: _____
                    Signature                                          Signature

Name: _____          David R. Schlee, Jr. Esq.
                                                        VP, Attorney Network Services

Title     President

Date:     12-2-2008          Date:   12/31/08

- 7